## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Krizia Torres-Martínez, personally and on behalf of minor GOT, | Case No. 23-cv-1594 |
| Plaintiffs, | |
| v. | Civil Rights, Special Education, Judicial Review, Attorney's Fees & Costs |
| Department of Education of Puerto Rico; and the Commonwealth of Puerto Rico, | |
| Defendants. | |

## <u>COMPLAINT FOR JUDICIAL REVIEW</u>

**TO THE HONORABLE COURT:**

**NOW COME** plaintiffs**,** through their undersigned attorney, and very respectfully state, allege and pray as follows:

### I.      INTRODUCTION

1.      This is a civil action brought by Mrs. Krizia Torres-Martínez ("Mrs. Torres"), personally and on behalf of her minor daughter GOT, for judicial review of the resolution issued by an administrative law judge ("ALJ") on November 6, 2023 in a special education due process complaint filed against the Department of Education of Puerto Rico (PRDOE) by minor student GOT pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*

2.      This action arises under the IDEA which provides jurisdiction to a federal district court for judicial review of an administrative official's decision, and to award any remedy that is deemed just and proper on claims for educational and related services under the federal statute.

Complaint for Judicial Review
Case No. 23-cv-1594

See 20 U.S.C. §§ 1403 and 1415(i)(2)-(3). See also 34 C.F.R. §§ 300.516-517.

## II.    JURISDICTION AND VENUE

3.     Jurisdiction is conferred on this Court by 20 U.S.C. §§ 1403, 1415 (i)(2)(A) and
(i)(3)(A), 28 U.S.C. §§ 1331, 1343 (a)(4), 2201 and 1441. See also 34 C.F.R. §§ 300.516-517
(2010).

4.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391, since the events
giving rise to this claim occurred in this district, and all parties are residents of the Commonwealth
of Puerto Rico.

5.     Supplementary claims are raised under local law for the education of individuals
with disabilities, 18 Laws of P.R. Ann. §§ 1351 et seq. ("Law 51"), and the local law Bill of Rights
for the Individuals with Disabilities, 1 Laws of P.R. Ann. §§ 512 et seq.

## III.    PARTIES

6.     Co-plaintiff Mrs. Krizia Torres-Martínez is the mother and legal guardian of minor
GOT.

7.     Mrs. Torres resides with her children in the Municipality of San Juan, Puerto Rico,
with physical and postal address at Urbanización Summit Hills, 753 Calle Torrecilla, San Juan,
PR 00920, phone number 787-223-8621 and email gizelys@iclud.com.

8.     Co-plaintiff GOT is a twelve (12) year old student who is diagnosed with autism
level 1, and attention deficit and hyperactivity disorder.

9.     GOT is registered and eligible to the Special Education Program administered by
the Department of Education of the Commonwealth of Puerto Rico ("PRDOE") as a child with

2

Complaint for Judicial Review
Case No. 23-cv-1594

disabilities with registration number 24555603.

10.     As an individual with disabilities, GOT is qualified by federal and state law to participate in the academic program of the public education system administered by the PRDOE.

11.     Plaintiffs very respectfully request that this Honorable Court reviews and reverses the resolution issued in administrative case number QEE-2324-27-08-00226 by ALJ Amelia Cintrón-Velázquez on November 6, 2023, as contrary to IDEA, state law and regulations, as interpreted by the United States Supreme Court, First Circuit Court of Appeals and other federal courts.

12.     Plaintiffs respectfully request that this Honorable Court reverse the ALJ's resolution and order defendants to provide the special education services and private educational placement at public cost that plaintiffs contend that GOT is entitled to under the IDEA, and that was denied by the ALJ in case number QEE-2324-27-08-00226.

13.     Pursuant to IDEA's section 1415(i)(3)(B), 20 U.S.C. § 1415(i)(3)(B), an attorney's fees and costs award is also requested if plaintiffs emerge as prevailing parties on judicial review.

14.     The Commonwealth of Puerto Rico is included as co-defendant due to the PRDOE's lack of capacity to sue and be sued.

15.     The Commonwealth of Puerto Rico physical address is that of its Department of Justice, located in Olimpo Street, Axtmayer Corner, Stop 11, San Juan, Puerto Rico, and its postal address is P.O. Box 9020192, San Juan, Puerto Rico 00902-0192.

16.     The Department of Education is an agency of the Commonwealth of Puerto Rico responsible for providing and administering the public education system in the Commonwealth of

3

Complaint for Judicial Review
Case No. 23-cv-1594

Puerto Rico.

17.    The physical address of the PRDOE is Urbanización Industrial Tres Monjitas, Avenida Teniente César González, Esquina Calaf, Hato Rey, Puerto Rico, 00919, and the postal address is P.O. Box 190759, San Juan, Puerto Rico 00919-0759.

18.    As a recipient of federal funding, the PRDOE is responsible for providing a free appropriate public education suited to GOT's needs as a student with disabilities.

**IV.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

19.    As previously mentioned, GOT is a child with disabilities diagnosed with level 1 autism and attention deficit and hyperactivity disorder.

20.    As a result of her conditions, GOT's individual needs require multiple accommodations and special education services to be able to receive a free appropriate public education ("FAPE"), as mandated by IDEA's section 1412(a)(1). See 20 U.S.C. § 1412(a)(1). See also 20 U.S.C. § 1401(9) (IDEA's definition of FAPE).

21.    The PRDOE failed to assess GOT in a timely manner in all areas of suspected disability, failed to perform reevaluations within IDEA's maximum three-year period, failed to address and remediate her academic regression, diminishing grades, emotional and behavioral needs, and failed to comply with IDEA's procedural safeguards.

22.    These severe violations of IDEA's procedural and substantive requirements led the PRDOE to fail to provide GOT in a timely manner with an adequately developed IEP and public placement alternative for the 2023-2024 school year prior to August 16, 2023, official commencement date of the PRDOE's 2023-2024 school year.

4

Complaint for Judicial Review
Case No. 23-cv-1594

23.     GOT attended the 2022-2023 school year in the Rafael Hernández Marín elementary school, where she finished her 5th grade.

24.     The Rafael Hernández Marín elementary school is in the Municipality of San Juan and is owned and administered by the PRDOE.

25.     Being an elementary school, the Rafael Hernández Marín school does not have a 6th grade level available for its students.

26.     Hence, GOT needed to transfer to an intermediate school for the 2023-2024 school year to attend sixth grade.

27.     Staying put in the Rafael Hernández Marín elementary school was not an option for GOT for the 2023-2024 school year.

28.     During the 2022-2023 school year, GOT experienced multiple difficulties at school and regressed considerably in both her academic and emotional/behavioral performance.

29.     GOT's emotional condition deteriorated to the point that she lost interest and became apprehensive about attending school.

30.     She would not wake up on time in the mornings and would refuse to attend school, pleading with her mother not to take her to the Rafael Hernández Marín elementary school.

31.     GOT's final grades report for the 2022-2023 school year in the Rafael Hernández Marín elementary school was admitted into evidence in the administrative trial and marked as Joint Exhibit 3.

32.     GOT's grades in core classes such as Spanish, social studies and math all decreased during the 2022-2023 school year from 80B, 86B and 74C until finishing with 60D, 66D and 72C,

Complaint for Judicial Review
Case No. 23-cv-1594

respectively.

33.     The 2022-2023 IEP (Joint Exhibit 1) also evinces GOT's lack of progress and regression during the 2022-2023 school year in the Rafael Hernández Marín elementary school.

34.     According to the 2022-2023 IEP, GOT's concluded the year with no higher than L3 in every measurable goal in Spanish and math (from a scale of L1 to L5), which meant that she was achieving the goal with support, direction and use of signals, and was therefore unable to meet the goals in an independent and consistent manner (L5).

35.     GOT also experienced disciplinary and behavioral issues at school during the 2022-2023 school year in the Rafael Hernández Marín elementary school.

36.     GOT exhibited lack of concentration and of effort and had difficulties taking notes and finishing work in school hours.

37.     Instead of revising the 2022-2023 IEP and performing additional assessments in all areas of suspected disability, as required by IDEA, the PRDOE opted to suggest and insist, in an IEP team meeting held on February 15, 2023 pursuant to Mrs. Torres' request (Joint Exhibit 2), that GOT be medicated as a solution to her academic and behavioral regression and problems.

38.      In the February 15, 2023 IEP team meeting the PRDOE recognized GOT's behavioral and academic regression and even suggested to assign a classmate as GOT's assistant which is contrary to IDEA, emotionally demeaning to GOT and also highly detrimental to the child that was burdened with the responsibility of assisting GOT in class.

39.     The PRDOE failed to revise or update the 2022-2023 IEP in the February 15, 2023 IEP team meeting to address GOT's academic and behavioral regression and problems.

6

Complaint for Judicial Review
Case No. 23-cv-1594

40.     GOT finished her fifth grade in the Rafael Hernández Marín elementary school with 60D in Spanish, 66D in social studies, 77C in English and 72C in math (Joint Exhibit 3).

41.     The Rafael Hernández Marín elementary school setting provided by the PRDOE to GOT for the 2022-2023 school year was not the least restrictive environment due to the classroom's large student count and the lack of accommodations and supplemental services that GOT's individual needs required for her to receive a FAPE.

42.     The PRDOE failed to provide GOT with a FAPE during the 2022-2023 school year and as result she regressed substantially both academically and emotionally.

43.     Without affording plaintiffs prior written notice, the PRDOE held an IEP team meeting on May 24, 2023 via videoconference using the agency's Microsoft Teams platform.

44.     The purpose of the May 24, 2023 IEP team meeting was to develop GOT's IEP for the 2023-2024 school year.

45.     The minutes of the May 24, 2023 IEP team meeting was admitted into evidence by the ALJ and marked as Joint Exhibit 5.

46.     By May 24, 2023, only five working days remained until the June 1, 2023 cutoff date established in local law for having an adequate 2023-2024 IEP signed and in effect, and for the identification and offer of a school setting in the least restrictive environment for GOT were such IEP could be implemented and GOT could attend her sixth grade.

47.     The PRDOE's 2022-2023 school year officially concluded on June 6, 2023.

48.     During the May 24, 2023 IEP team meeting, PRDOE personnel showed GOT's mother, for the first time by displaying it on screen, a draft of the proposed 2023-2024 IEP that the

7

Complaint for Judicial Review
Case No. 23-cv-1594

agency had drafted.

49.     Prior to the May 24, 2023 IEP team meeting, the PRDOE did not send a copy of the proposed 2023-2024 IEP to plaintiffs.

50.     Prior to the May 24, 2023 IEP team meeting, the PRDOE did not send the agency's SAEE-06 invitation to IEP team meeting (known in Spanish as COMPU meeting) form to plaintiffs.

51.     Prior to the May 24, 2023 IEP team meeting, the PRDOE did not send the agency's SAEE-08a consent to holding an IEP team meeting via alternate/remote mechanism form to plaintiffs.

52.     Prior to the May 24, 2023 IEP team meeting, the PRDOE did not send any document, information on their intended course of action to plaintiffs or any of the other information and disclosures required by IDEA. See 20 U.S.C. § 1415(c)(1) (prior written notice requirements); 34 C.F.R. §§ 300.322 (parent participation, notice requirements and copy of IEP to parents); 300.503 (requirements of prior notice by the public agency and its minimum contents); 300.504 (requirement of procedural safeguards notice).

53.     The PRDOE's failure to issue plaintiffs prior written notice in anticipation of the May 24, 2023 IEP team meeting curtailed GOT's mother from having a meaningful participation in the meeting and, therefore, resulted in a deprivation of GOT's right to a FAPE.

54.     Contrary to IDEA's minimum personnel requirements, a representative from the PRDOE's Special Education Program was not present at the May 24, 2023 IEP team meeting. See 20 U.S.C. § 1414(d)(1)(B)(iv).

Complaint for Judicial Review
Case No. 23-cv-1594

55.     The May 24, 2023 IEP team members recognized that there were legitimate doubts

and concerns about GOT academic functional level and the need to perform multiple assessments

in autism, psychoeducational, psychometric, socioemotional and occupational therapy areas to

ascertain the student's adequate educational placement in the least restrictive environment.

56.     GOT's mother, Mrs. Krizia Torres, informed the IEP team members of GOT's

apprehension to assisting to school and her concerns on her daughter's readiness for competing in

a sixth-grade regular classroom, and on whether such placement alternative was in fact the least

restrictive environment for GOT.

57.     Mrs. Torres' concerns and pleads for more information to identify the least

restrictive environment educational placement for GOT were noted and attended to by referring

the student to multiple assessments to be performed in an unspecified future date by unspecified

specialists.

58.     The PRDOE also declined to consider Mrs. Torres' concerns regarding GOT's

educational placement for the 2023-2024 school year, GOT's emotional distress and apprehension

to assisting to school, although the agency was fully aware such concerns were supported by her

underachievement at school, her evident emotional and functional regression, and diminishing

grades.

59.     In addition to her marked regression and decreasing grades at school during the

2022-23 school year, the PRDOE knew that GOT's had several evaluations that were over three

(3) years old and therefore in violation of IDEA's section 1414(a)(2)(B).

60.     The PRDOE was aware of the student's need for multiple assessments by a

9

Complaint for Judicial Review
Case No. 23-cv-1594

multidisciplinary team of specialists in areas such as autism, psychoeducational, psychometric, socioemotional and occupational therapy in order to consider her emotional state and needs and her then current level of academic performance and the educational placement in the least restrictive environment, but nonetheless opted to try to force Mrs. Torres's to accept the proposed 2023-24 IEP was shown to her for the first time on screen live during the meeting (without prior written notice or any effort to assure the mother's meaningful participation in the IEP team meeting).

61.     On the May 24, 2023 IEP team meeting, the PRDOE proposed and actually changed GOT's educational placement from a regular classroom with related services to a regular classroom with supplemental services.

62.     This change of educational placement was implemented by the PRDOE without prior written notice to plaintiffs and without Mrs. Torres meaningful participation, input and informed consent.

63.     The May 24, 2023 IEP team meeting participants recognized that GOT needed to be reevaluated in autism, occupational therapy, psychoeducational, psychometric, and socioemotional areas.

64.     By referring her to an autism evaluation, the PRDOE confirmed that they suspected that GOT could suffer from autism but had nonetheless failed so far to assess her in that crucial area of suspected disability.

65.     The autism evaluation performed by the PRDOE during the summer of 2023 confirmed that GOT suffers from level 1 autism.

Complaint for Judicial Review
Case No. 23-cv-1594

66.     The autism evaluation performed by the PRDOE during the summer of 2023 that diagnoses GOT with level 1 autism is still pending discussion and implementation by a duly constituted IEP team meeting, which is a responsibility of the PRDOE.

67.     The prompt holding of a duly constituted IEP team meeting to discuss and implement the autism evaluation was the fourth remedy sought in the administrative due process complaint and was left unaddressed and unresolved by the ALJ in the resolution under review.

68.     The May 24, 2023 IEP team meeting participants also recognized that there were concerns and uncertainty about GOT's her level of academic performance and what school placement would be the least restrictive environment for her to attend sixth grade in the upcoming 2023-2024 school year.

69.     The PRDOE's personnel present during the May 24, 2023 IEP team meeting, without any valid justification or explanation, chose to conclude the meeting by stating that they were all in agreement with the proposed 2023-24 IEP without identifying and listing the names and descriptions of the public school alternatives that constituted the least restrictive environment for GOT to attend her sixth grade in August 16, 2023.

70.     The PRDOE's complete failure and disregard of GOT's procedural safeguards and right to prior written notice of the proposed IEP, the change in educational placement made in the May 24, 2023 IEP team meeting, her individual needs and then current level of academic functional level, among other shortcomings, resulted in an proposed IEP for the 2023-2024 school year that failed to meet the minimum content requirements set in IDEA's section 1414(d)(1)(A)(i). See 20 U.S.C. § 1414(d)(1)(A)(i).

Complaint for Judicial Review
Case No. 23-cv-1594

71.    The proposed 2023-2024 IEP prepared by the PRDOE and shown on screen for the first time to GOT's mother during the May 24, 2023 virtual IEP team meeting was defective, among other reasons, because it failed to address and state her current level of academic performance, her needs, her diagnoses, the educational placement in the LRE, and included boiler plate measurable goals that were not leveled and individualized to GOT's needs and unbeknownst level of academic performance, and were therefore too ambitious and unattainable in light of her failing grades, academic and emotional regression and the fact that she had not been able to attain the goals of the previous IEP.

72.    The proposed 2023-2024 IEP prepared by the PRDOE for GOT was also inadequate because it failed to include the social studies and English courses, were GOT had experienced difficulties, needed assistance and had finished with 66D and 77C grades, respectively.

73.    Simply put, the proposed 2023-2024 IEP prepared by the PRDOE for GOT was a mere form document made in a hurry by agency personnel using the agency's standard goals for sixth grade without consideration or even knowledge of GOT's unique needs, diagnoses, and level of academic performance, and was therefore in violation of IDEA by not being "reasonably calculated to enable [GOT] to make progress appropriate in light of [her] circumstances," Endrew F. v. Douglas County Sch. Dist. Re-1, 580 U.S. 386, 403 (2017).

74.    As the May 24, 2023 IEP team meeting minutes evince (Joint Exhibit 5), the PRDOE personnel did not offer a single specific school alternative for GOT to attend her sixth grade during the May 24, 2023 IEP team meeting.

12

Complaint for Judicial Review
Case No. 23-cv-1594

75.     During or after the May 24, 2023 IEP team meeting, the PRDOE did not submit plaintiffs with the agency's SAEE-04, and/or SAEE-07 a and b forms regarding the school setting identification and alternatives for GOT's sixth grade.

76.     The PRDOE's failure to issue plaintiffs prior written notice of the educational placement and/or school alternatives available for GOT to attend sixth grade prior to the state law June 1, 2023 deadline resulted in a FAPE deprivation by leaving her devoid of a public school alternative.

77.     The PRDOE failed to contact or otherwise follow up on the 2023-2024 IEP drafting and/or the school setting identification and offer procedures until August 2023 when, a few days prior to the commencement of the 2023-2024 school year, GOT's mother was informally summoned to visit the Rafael Hernández Marín elementary school to attend matters regarding GOT's special education.

78.     GOT's mother quickly visited the Rafael Hernández Marín elementary school where she was attended by her daughter's former special education teacher, Mr. Eliezer Pérez-Ortiz.

79.     Mr. Pérez showed GOT's mother, for the first time, printed copies of the proposed 2023-2024 IEP and the May 24, 2023 IEP team meeting minutes.

80.     Prior to this August meeting, GOT's mother had not received a copy or even seen the proposed May 24, 2023 IEP team meeting minutes drafted by PRDOE personnel.

81.     The proposed May 24, 2023 IEP team meeting minutes were drafted by PRDOE personnel without GOT's mother input or participation.

Complaint for Judicial Review
Case No. 23-cv-1594

82.     To her surprise, both the proposed 2023-2024 IEP and the May 24, 2023 IEP team meeting minutes were already signed by all of the agency's personnel who participated at the meeting.

83.     Appalled by the PRDOE's intention to force her to sign documents that she had not reviewed and studied, and identifying at first glance several contents of the minutes with which she objected and disagreed, GOT's mother refused to sign both documents until they were amended to her satisfaction.

84.     The PRDOE's 2023-2024 school year officially commenced on August 16, 2023.

85.     Due exclusively to the PRDOE's multiple severe procedural violations of IDEA's safeguards, GOT did not have a signed or IDEA compliant IEP by August 16, 2023.

86.     Due exclusively to the PRDOE's multiple severe procedural violations of IDEA's safeguards, GOT was not offered a public-school alternative in the least restrictive environment (LRE) for her sixth grade prior to August 16, 2023.

87.     In the absence of an adequate IEP and LRE school alternative, GOT is currently attending sixth grade in the ongoing 2023-2024 school year in the Colegio Nuestra Señora de Belén private school.

88.     In the Colegio Nuestra Señora de Belén private school GOT is attending a classroom with a maximum of 12 students where she is being provided the accommodations and supplemental services that she needs.

89.     Up to date GOT has progressed satisfactorily both academically and emotionally in Colegio Nuestra Señora de Belén private school.

Complaint for Judicial Review
Case No. 23-cv-1594

90.     As of this date the PRDOE has failed to administer and/or discuss in a duly constituted IEP team meeting the evaluations that were recommended by the May 24, 2023 IEP team meeting in the autism, psychoeducational, psychometric, socioemotional and occupational therapy disciplines.

91.     As of this date the PRDOE is not providing GOT will all the related services that have been recommended to her and that she needs to receive a FAPE.

92.     The PRDOE is currently in violation of the IDEA for its failure to provide a FAPE to GOT during the ongoing 2023-2024 school year.

## V.     ADMINISTRATIVE RESOLUTION SUBJECT TO JUDICIAL REVIEW

93.     On August 21, 2023, plaintiffs filed a due process complaint requesting, among other relief, that the PRDOE be ordered to pay for GOT's education at the Colegio Nuestra Señora de Belén private school for the entire 2023-2024 school year and to provide GOT with psychological, speech and language, educational and occupational therapy services, and to hold a properly constituted IEP team meeting to discuss several assessment reports that had been issued to her but were pending discussion and implementation by the agency, and any other remedy that the ALJ deemed just and proper under federal and state law and regulations.

94.     The due process complaint was identified by the PRDOE as administrative case number QEE-2324-27-08-00226.

95.     The PRDOE assigned administrative case number QEE-2324-27-08- to ALJ Amelia Cintrón-Velázquez for resolution.

96.     The evidentiary hearing (administrative trial) was held on September 29, 2023

15

Complaint for Judicial Review
Case No. 23-cv-1594

before ALJ Cintrón.

97.     Present for the PRDOE was its counsel, Mrs. Lymaris Pérez-Rodríguez, Esq.

98.     Plaintiffs' witnesses were GOT's mother, Mrs. Krizia Torres, and Mrs. Ana Yépez, Associate Director of Colegio Nuestra Señora de Belén private educational institution.

99.     Plaintiffs also submitted a total of 5 stipulated documents as evidence (marked as joint exhibits 1-5) and an additional two documents that were admitted as evidence and marked as complainant exhibits 1 and 2.

100.    The PRDOE did not present any witnesses and chose to limit its evidence to the stipulated documents and cross-examining the complainant's two witnesses.

101.    Pursuant to the PRDOE's request, ALJ Cintrón allowed the agency to file a memorandum of law and allowed plaintiffs to file a response, which both parties did in a timely fashion.

102.    On November 6, 2023, ALJ Cintrón issued a resolution denying all the relief sought by plaintiffs in the administrative due process complaint.

103.    The resolution issued by ALJ Amelia Cintrón-Velázquez on November 6, 2023 contains multiple serious errors of law and omits several pertinent and important facts.

104.    The ALJ's resolution should be reversed because it is contrary to the IDEA federal law, Puerto Rico law, regulations, and case law.

105.    Upon reversing the ALJ's resolution, it is respectfully requested that defendants be ordered to provide GOT with all the remedy sought in the administrative due process complaint filed on August 21, 2023 in case number QEE-2324-27-08-00226, including the provision of an

Complaint for Judicial Review
Case No. 23-cv-1594

adequately drafted IEP for the 2023-2024 school year and the reimbursement of the total cost of GOT's education in the Colegio Nuestra Señora de Belén private educational institution for the entire 2023-2024 school year, and the multiple assessments and duly constituted IEP team meeting requested therein.

106.   Plaintiffs also request that GOT be provided with compensatory related services for all of the related (therapy) services that the PRDOE failed to provide her until the final disposition of this case.

107.   The PRDOE's multiple violations of GOT's procedural and substantive rights under the IDEA impeded GOT's right to a FAPE and deprived her of educational benefit.

108.   Consequently, plaintiffs are entitled to relief under IDEA's section 1415(f)(3)(E)(ii) and defendants should be held liable for providing compensatory services to GOT See 20 U.S.C. § 1415(f)(3)(E)(ii). See also 34 C.F.R. § 300.513(a)(2).

109.   The PRDOE's multiple violations of GOT's procedural and substantive rights under the IDEA left GOT without a public-school alternative in the least restrictive environment for attending her sixth grade prior to August 16, 2023 when the PRDOE's 2023-24 school year officially commenced, therefore depriving her of the right to a free appropriate public education ("FAPE").

110.   Defendants also breached GOT's procedural safeguards under IDEA's section 1415, 20 U.S.C. § 1415, and Puerto Rico law and the PRDOE's Special Education Services Manual by totally disregarding her rights to prior written notice with regards to the proposed 2023-24 IEP, the May 24, 2023 IEP team meeting, the mandatory participants of such meeting and by

Complaint for Judicial Review
Case No. 23-cv-1594

failing to formally offer at least one public school that resulted in the least restrictive environment for GOT to attend her sixth-grade prior to the August 16, 2023 commencement of the 2023-24 school year.

111.   These severe procedural violations constitute a denial of GOT's right to a FAPE because, among other repercussions, they disallowed a meaningful participation in the drafting process of the IEP and on the May 24, 2023 IEP team meeting and resulted in the PRDOE's complete failure to offer at least one school alternative prior to the commencement of the 2023-2024 for GOT to attend her sixth grade.

112.   IDEA's section 1414(a)(2)(B) requires that for the PRDOE to receive federal funding under the Act, GOT had to be reevaluated "at least once every 3 years." See 20 U.S.C. § 1414(a)(2)(B).

113.   The PRDOE failed to administer GOT the reevaluations within the 3-year period, although they were all needed as part of the multidisciplinary assessment process required by IDEA's section 1414(b), Id. at § 1414(b), to identify, among other, GOT's individual needs and level of academic performance, in the following areas/disciplines: speech and language and occupational therapy.

114.   The PRDOE also failed to administer GOT, in a timely fashion, evaluations needed as part of the multidisciplinary assessment process in all areas of suspected disability, as required by IDEA's section 1414(b)(3), Id. at § 1414(b)(3), in the following areas/disciplines: autism, socioemotional, and a psychoeducational reevaluation. See also 34 C.F.R. § 300.305.

115.   In fact, the autism evaluation belatedly performed by the PRDOE after the May 24,

Complaint for Judicial Review
Case No. 23-cv-1594

2023 IEP team meeting and proposed 2023-24 IEP confirmed that GOT has level 1 autism and

therefore requires certain accommodations, supplemental services and a classroom with a reduced

amount of students (less than 12 students, inclusive).

116.    Among other reasons, the proposed 2023-24 IEP drafted by the PRDOE in the May

24, 2023 IEP team meeting was inadequate and failed to meet the minimum procedural and

substantive requirements set forth in IDEA's section 1414(d) because it did not consider or take

into account GOT's then current level of academic performance and individual needs and fragile

emotional state, including but not limited to her main diagnoses which are level 1 autism and

attention deficit hyperactivity disorder.

## VI.    STANDARD OF REVIEW

117.    Under IDEA's section 1415(i)(2)(A), the district court reviews the administrative

record, which may be supplemented by additional evidence from the parties and makes an

"independent ruling based on the preponderance of the evidence." Roland M. v. Concord Sch.

Comm., 910 F.2d 983, 989 (1st Cir. 1990) (quoting Burlington v. Department of Educ., 736 F.2d

773, 790 (1st Cir. 1984)).

118.    It is by now well settled law in the First Circuit that under IDEA's section

1415(i)(2)(A) district courts should review questions of law de novo and findings of fact for clear

error. See Doe v. Newton Pub. Sch., 48 F.4th 42, 53-54 (1st Cir. 2022) (citing Johnson v. Boston

Pub. Schs, 906 F.3d 182, 191 (1st Cir. 2018); Doe v. Cape Elizabeth Sch. Dist., 832 F.3d 69, 76

(1st Cir. 2016)).

119.    In Newton the First Circuit clarified that, "where issues involve mixed questions of

Complaint for Judicial Review
Case No. 23-cv-1594

law and fact, we have employed a 'degree-of-deference continuum,' calling for 'non-deferential plenary review' of 'law-dominated questions' and more 'deferential review' where the questions are 'fact-dominated.'" Newton Pub. Sch., 48 F.4th at 53 (citing Cape Elizabeth, 832 F.3d at 76-77 (quoting Mr. I ex rel L.I. v. Me. Sch. Admin. Dist. No. 55, 480 F.3d 1, 10 (1st Cir. 2007)).

120.    This intermediate level of review reflects the concern that courts not substitute their own notions of educational policy for that of the state agency, which has greater expertise in the educational arena. Id. (citing Rowley, 458 U.S. at 207).

121.    The District Court's role in addressing a challenge under the IDEA to an administrative ruling is an exercise of "involved oversight" of the agency's factual findings and conclusions. Newton Pub. Sch., 48 F.4th at 53-54 (citing S. Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st Cir. 2014) (quoting Sebastian M. v. King Philip Reg'l Sch. Dist., 685 F.3d 79, 84 (1st Cir. 2012)).

122.    In accord with that role, the District Court must afford "due weight" to the determinations made in the administrative proceedings. Newton Pub. Sch., 48 F.4th at 54 (citing Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982)).

123.    In judicially reviewing the administrative outcome, courts should make "independent decisions based on a preponderance of the evidence." Spielberg v. Henrico County Public Schools, 853 F.2d 256, 258 (4th Cir. 1988)(citing Rowley, 458 U.S. at 205, 20 U.S.C. § 1415(e)(2)). See also Newton Pub. Sch., 48 F.4th at 54; G.D. v. Swampscott Pub. Sch., 27 F.4th 1, 6 (1st Cir. 2022); 20 U.S.C. § 1415(i)(2)(C)(iii)).

Complaint for Judicial Review
Case No. 23-cv-1594

## VII.    ISSUES PRESENTED FOR JUDICIAL REVIEW

124.    The resolution issued on November 6, 2023 by ALJ Cintrón denying all the relief

sought by plaintiffs in the administrative due process complaint should be reversed because it is

contrary to the IDEA federal law, Puerto Rico law, regulations and case law.

125.    The ALJ erred as a matter of law by denying the due process complaint without

employing the two-pronged analysis established by U.S. Supreme Court in Bd. of Educ. v. Rowley,

458 U.S. 176, 206-07 (1982), and therefore disregarded the PRDOE's multiple severe procedural

and substantive violations of the IDEA and state law, which resulted in the denial of GOT's right

to a FAPE. See also D.B. ex. Rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34-35 (1st Cir. 2012).

126.    In Rowley, the Supreme Court established a two-prong analysis adjudicating a

special needs student's administrative due process complaint under IDEA. First, the Court and/or

hearing officer must determine if the educational agency complied with the procedures established

in the IDEA. Second, the Court and/or hearing officer must determine if the IEP developed in

compliance with the procedures established in the Act was reasonably calculated to enable the

child to receive educational benefit. Rowley, 458 U.S. at 207. See also Endrew F., 580 U.S. at 399-

400 (clarifying that to comply with IDEA "the IEP must be reasonably calculated to enable a child

to make progress appropriate in light of the child's circumstances"); D.B. v. Esposito, 675 F.3d

26, 34 (1st Cir. 2012) (holding that "to comply with the IDEA, an IEP must be reasonably

calculated to confer meaningful educational benefit.").

127.    If the ALJ would have performed the Rowley two-pronged analysis in adjudicating

GOT's due process complaint, she would have identified the PRDOE's multiple severe procedural

Complaint for Judicial Review
Case No. 23-cv-1594

violations of the procedural safeguards provided in IDEA and state law to protect GOT's rights

and facilitate the provision of a FAPE.

128.    If the ALJ would have performed the <u>Rowley</u> two-pronged analysis, she would

have identified and considered the highly detrimental consequences of such procedural violations

which amounted to a FAPE deprivation by completely disallowing GOT's mother from exercising

her right to a meaningful participation in both the preparation of the proposed 2023-2024 IEP and

the May 24, 2023 IEP team meeting proceedings and its minutes. <u>See</u> 20 U.S.C. § 1415(c)(1) (prior

written notice requirements); 34 C.F.R. §§ 300.322 (parent participation, notice requirements and

copy of IEP to parents); 300.503 (requirements of prior notice by the public agency and its

minimum contents); 300.504 (requirement of procedural safeguards notice).

129.    The ALJ also erred in ignoring the fact that in the drafting of the May 24, 2023 IEP

team meeting minutes and the proposed 2023-24 IEP GOT's mother did not have a meaningful

participation.

130.    The ALJ also erred in ignoring the fact that all PRDOE signed both documents

without sharing copies or providing prior written notice to Mrs. Torres.

131.    The ALJ also erred in ignoring the fact that the PRDOE made highly important

decisions on GOT's placement and IEP without her mother's input and meaningful participation.

132.    These facts that were erroneously omitted by the ALJ evince the PRDOE's

violation of IDEA's regulations 300.116 and 300.322 requiring meaningful parent participation in

the IEP preparation, the IEP team proceedings and the educational placement decision. <u>See</u> 34

C.F.R. §§ 300.116 (requiring that "[i]n determining the educational placement of a child with a

22

Complaint for Judicial Review
Case No. 23-cv-1594

disability… each public agency must ensure that the placement decision is made by a group of persons, <u>including the parents</u>, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options… [and that t]he child's placement… [i]s based on the child's IEP."), 300.322 (meaningful parent participation requirement) <u>See also Spielberg v. Henrico County Public Schools</u>, 853 F.2d 256, 259 (4th Cir. 1988) (recognizing the general rule that the educational placement decision must be based on the IEP and holding that "[t]he decision to place Jonathan at Randolph before developing an IEP on which to base that placement violates this regulation as interpreted by the Secretary of Education. It also violates the spirit and intent of the EHA [IDEA predecessor statute], <u>which emphasizes parental involvement. After the fact involvement is not enough</u>.") (our emphasis).

133.     The ALJ also erred, as a matter of law, in determining that IDEA always requires written notice by the parents of a special needs child as a requisite for allowing the private placement at public cost when IDEA and its interpretative caselaw expressly allow for parents to obtain a ruling compelling the agency's payment of the child's private school placement even in the absence of such written notice. <u>See Forest Grove Sch. Dist. v. T.A.</u>, 557 U.S. 230, 241 (2009) (holding that IDEA's section 1412(a)(10)(C)(i) "statement that reimbursement is not authorized when a school district provides a FAPE could be read to indicate that reimbursement is authorized when a school district does not fulfill that obligation.")

134.     The ALJ also erred in classifying GOT as a unilateral placed child in private school even when the undisputed evidence demonstrated that the PRDOE failed to make a FAPE available to her prior to the commencement of the 2023-2024 school year on August 16, 2023.

23

Complaint for Judicial Review
Case No. 23-cv-1594

135.    By omitting its duties to have an IDEA compliant IEP and then formally offering at least one LRE public school alternative prior to the commencement of the 2023-2024 school year, the PRDOE denied GOT the right to a FAPE.

136.    The ALJ erred, as a matter of law, by ignoring precedent set forth by the US Supreme Court IDEA section 1412(a)(10)(C)(i)'s "safe harbor explicitly bars reimbursement <u>only when a school district makes a FAPE available</u> by correctly identifying a child as having a disability <u>and proposing an IEP adequate to meet the child's needs</u>." <u>Forest </u>Grove, 557 U.S. at 241 (our emphasis). The <u>Forest Grove</u> further clarified that, "[i]ndeed, its statement that reimbursement is not authorized when a school district provides a FAPE could be read to indicate that <u>reimbursement is authorized when a school district does not fulfill that obligation</u>." <u>Id.</u>   (our emphasis).

137.    IDEA requires the PRDOE to have an adequately prepared IEP in effect for each student registered in the Special Education Program "at the beginning of each school year." <u>See</u> 20 U.S.C. § 1414(d)(2)(A).

138.    The PRDOE failed to provide GOT with an appropriately drafted IEP for the 2023-24 school year, as per the requirements of IDEA's section 1414(d)(1)(A)(i), 20 U.S.C. § 1414(d)(1)(A)(i).

139.    As established in the binding judgment of the <u>Rosa Lydia Vélez</u> class action, state law es even more favorable to GOT by requiring that the PRDOE have in effect the IEP and provide a school setting alternative within 5 days prior to the conclusion of the school year, which in this case would have been prior to the 1st of June 2023. <u>See</u> Judgment issued on February 14,

Complaint for Judicial Review
Case No. 23-cv-1594

2002, <u>Rosa Lydia Vélez, et al. v. Aponte-Roque, et al.</u>, Case No. KPE 80-1738 (907) (February

14, 2002) at 31, section D(2). <u>See</u> <u>also</u> PRDOE Manual of Special Education Procedures, July

2020 Edition, at 73, section 7.4(2).

140.    As per the applicable IDEA provisions, the child's IEP will be used by the

educational agency to determine the potential educational placement of the child before the

commencement of each academic year (usually in the months of April or May of each year). <u>See</u>

20 U.S.C. §§ 1401(9)(D), 1412(a)(5) and 1414(d).  <u>See</u> <u>also</u> 34 C.F.R. § 300.116(b)(2).

141.    Hence, IDEA requires that the PRDOE have in effect an adequately developed IEP

for the child <u>prior to</u> the educational agency's proposal of one or more public schools as potential

educational setting for the special needs child. <u>See</u> 20 U.S.C. § 1412(a)(5)(B)(establishing the

educational agency's responsibility to assure the provision of "a free appropriate public education

according to the unique needs of the child as described in the child's IEP."). <u>See</u> <u>also</u> <u>Spielberg v.

Henrico County Public Schools</u>, 853 F. 2d 256, 259 (4th Cir. 1988) (holding that the "IEP

objectives must be written <u>before</u> placement.").

142.    The PRDOE's omission of its duties to provide in a timely fashion with an IDEA

compliant IEP and a school setting alternative where she could be afforded the educational and

related services needed by her condition for the 2023-2024 school year resulted in a FAPE

deprivation.

143.    Pursuant to precedent, GOT had a valid claim for reimbursement of the costs of her

private placement even though her mother did not inform in writing her decision to pay the tuition

fee deposit or her decision to place her in private school. <u>See</u> <u>Burlington v. Department of Ed. of</u>

Complaint for Judicial Review
Case No. 23-cv-1594

<u>Mass.</u>, 471 U.S. 359, 370 (1985) (holding that "[i]n a case where a court determines that a private placement desired by the parents was proper under the Act and that an IEP calling for placement in a public school was inappropriate, it seems clear beyond cavil that 'appropriate' relief would include a prospective injunction directing the school officials to develop and implement at public expense an IEP placing the child in a private school."); <u>Forest Grove</u>, 557 U.S. at 241 (holding private placement reimbursement authorized when a school district does not fulfill its FAPE obligation).

144.   The ALJ also erred in equating the payment of the deposit for the tuition fee of GOT in the Colegio Nuestra Señora de Belén private school to the actual withdrawal of GOT from the public school system.

145.   The undisputed evidence demonstrated that Mrs. Torres paid the tuition deposit April 18, 2023 in the private school, but GOT continued to attend the Rafael Hernández Marín public school until the conclusion of the 2022-2023 on June 2023 and her continued cooperation and compliance with the PRDOE's procedures, requests and citations.

146.   The ALJ erred by omitting the fact that GOT was never unilaterally withdrawn from the public system.

147.   It was not until August 2023 when, <u>in the absence of a public-school offering</u>, GOT started attending the Colegio Nuestra Señora de Belén private school for her sixth grade.

148.   Otherwise, GOT would have been deprived of a school setting to attend to at the commencement of the 2023-2024 school year since the undisputed evidence presented in the administrative trial demonstrated that by August 16, 2023 the PRDOE had not offered a single

Complaint for Judicial Review
Case No. 23-cv-1594

school alternative for GOT to attend sixth grade.

149.   The ALJ erred by omitting the fact that GOT's former school, the Rafael Hernández Marín public school, was an elementary school that only had classes available until fifth grade.

150.   The ALJ erred by omitting the fact that, since GOT was passing to intermediate level school for the 2023-2024 school year, staying put was not an option for GOT.

151.   The ALJ erred by omitting the fact that, considering GOT's regression at school, diminishing grades and evident emotional distress caused by her improper placement in a regular classroom with too many students and limited accommodations, as well as the agency and IEP team members failure to take remedial actions to address her daughter's difficulties and need for both amending the IEP, conducting additional assessments to ascertain her current level of academic performance and needs, as well as her fragile emotional state, Mrs. Torres' decision to pay the deposit fee to secure a space in the limited student count sixth grade classroom in the private school was justified.

152.   The ALJ erred by omitting the fact that Mrs. Torres' decision to reserve a space in private school, to avoid losing a seat in case the PRDOE did not have an LRE school alternative, did not result by itself in unilateral placement.

153.   The ALJ erred by omitting the fact that GOT was not withdrawn on April 18, 2023 from the public system since she continued to attend classes in public school until the conclusion of the 2022-2023 school year on June 6, 2023.

154.   The ALJ erred as a matter of law by holding GOT as unilaterally placed in private school even when the evidence demonstrated that PRDOE deprived her of a FAPE for both the

27

Complaint for Judicial Review
Case No. 23-cv-1594

2022-2023 and 2023-2024 school years.

155.   In the absence of the PRDOE's timely compliance with its duties to have an adequate IEP in place and offer at least one specific public-school alternative in the least restrictive environment prior to August 16, 2023 when the 2023-24 school year commenced, GOT's reimbursement cause of action was valid.

156.   In addition to the multiple severe procedural violations of the IDEA, the PRDOE did not meet the prerequisites to a unilateral placement holding in this case.

157.   Consequently, the ALJ erred in finding that GOT was unilaterally placed in the Colegio Nuestra Señora de Belén private school for the 2023-2024 school year based exclusively in the date that her mother paid the tuition deposit and omitting the threshold Rowley two-pronged analysis that led the ALJ to disregard the multiple severe procedural violations of both IDEA and state law and regulations that resulted in the denial of a FAPE to GOT for 2023-2024 school year.

158.   Having the PRDOE denied her a FAPE for the 2023-2024 school year, GOT could not be held to have been unilaterally placed in private school by her parents.

159.   The ALJ also erred by omitting issuing findings of the undisputed facts that the PRDOE never issued GOT with prior written notice prior to the May 24, 2023 IEP team meeting and that such violations deprived GOT's mother from having a meaningful participation in the 2023-2024 IEP drafting process and in the May 24, 2023 IEP team meeting. See 20 U.S.C. § 1415(b), (d) (prior written notice requirement); 34 C.F.R. § 300.322 (meaningful parent participation requirement).

160.   The ALJ also erred by omitting issuing a finding of the undisputed fact that the

Complaint for Judicial Review
Case No. 23-cv-1594

PRDOE breached state law by not having an adequate 2023-2024 IEP prepared for GOT and a LRE school setting alternative by the June 1, 2023 state law deadline.

161.    Puerto Rico state law requires that the PRDOE have in effect the IEP and educational placement alternative within 5 days prior to the conclusion of the school year, which in this case was the 1st of June 2023. See Judgment issued on February 14, 2002, Rosa Lydia Vélez, et al. v. Aponte-Roque, et al., Case No. KPE 80-1738 (907) (February 14, 2002) at 31, section D(2). See also PRDOE's Manual of Special Education Procedures, July 2020 Edition, at 73, section 7.4(2).

162.    Because the PRDOE waited until May 24, 2023 to hold the IEP team meeting for preparing the initial draft of GOT's 2023-2024 IEP, a mere 5 working days prior to the state law deadline, the agency (and not plaintiffs) is solely responsible for its failure to comply with both state and federal law in this case.

163.    The ALJ also erred by completely failing to evaluate and analyze the proposed 2023-2024 IEP contents and evaluating whether it was procedurally and substantively IDEA compliant. See Town of Burlington v. Department of Education, Commonwealth of Massachusetts, 736 F.2d 773 (1st Cir. 1984) (noting that "[t]he ultimate question for a court under the Act is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time."), aff'd 471 U.S. 359 (1985).

164.    As recognized by the U.S. Supreme Court, "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances" and such IEP "is constructed only after

Complaint for Judicial Review
Case No. 23-cv-1594

careful consideration of the child's present levels of achievement, disability, and potential for growth." <u>Endrew F.</u>, 580 U.S. at 399-400 (<u>citing</u> §§1414(d)(1)(A)(i)(I)-(IV), (d)(3)(A)(i)-(iv)).

165.    By failing to analyze the contents of the proposed 2023-2024 IEP prepared by the PRDOE on May 24, 2023, the ALJ omitted identifying and issuing a finding of both fact and law of its uncontested inadequacy due to, among other deficiencies, to the lack of "a statement of the child's present levels of academic achievement and functional performance, including… (aa) how the child's disability affects the child's involvement and progress in the general education curriculum…" as required by IDEA's section 1414(d)(1)(A)(i)(I)(aa). <u>See</u> <u>also</u> <u>Deal v. Hamilton County Bd. of Educ.</u>, 392 F.3d. 840, 853 (6th Cir. 2004) (holding that "as part of providing a FAPE, school districts receiving funds under the IDEA are required to establish an IEP for each child with a disability" and that "the IEP must 'contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress.'").

166.    By failing to analyze the contents of the proposed 2023-2024 IEP prepared by the PRDOE on May 24, 2023, the ALJ omitted identifying and issuing a finding of both fact and law of its uncontested inadequacy due to, among other deficiencies, to the lack of "a statement of measurable annual goals, including academic and functional goals, designed to" both "meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum;" and "meet each of the child's other educational needs that result from the child's disability," as required by IDEA's section 1414(d)(1)(A)(i)(II)(aa-bb).

Complaint for Judicial Review
Case No. 23-cv-1594

167.    By failing to analyze the contents of the proposed 2023-2024 IEP prepared by the PRDOE on May 24, 2023, the ALJ omitted identifying and issuing a finding of both fact and law of its uncontested inadequacy due to, among other deficiencies, to the lack of "a statement of the special education and related services and supplementary aids and services…" "to advance appropriately toward attaining the annual goals" and "to be involved in and make progress in the general education curriculum," as required by IDEA's section 1414(d)(1)(A)(i)(IV)(aa-bb).

168.    The ALJ also erred by omitting issuing a finding of the undisputed fact that the PRDOE never adequately constituted the May 24, 2023 IEP team meeting because it failed to have an agency representative present.

169.    Contrary to IDEA's minimum personnel requirements, a representative from the PRDOE's Special Education Program was not present at the May 24, 2023 IEP team meeting. See 20 U.S.C. § 1414(d)(1)(B)(iv). This omission resulted in the PRDOE's failure to identify and offer school alternatives in the LRE for GOT to attend her sixth grade in the May 24, 2023 IEP team meeting.

170.    The ALJ also erred by omitting issuing a finding of fact of the undisputed fact that the PRDOE ignored GOT's evident regression and diminishing grades during the 2022-2023 school year and failed to either amend the 2022-2023 IEP, conduct in a timely basis the needed assessments to evaluate her educational and emotional state and needs, among other, and opted to force GOT's mother to accept the proposed 2023-2024 IEP that was submitted without prior written notice and prepared without having assessed the student in all areas of suspected disability as required by IDEA in section 1414(b)(3)(B), among other severe procedural and substantive

Complaint for Judicial Review
Case No. 23-cv-1594

violations of IDEA and state law that resulted in depriving GOT of a FAPE for both the 2022-23

and 2023-24 school years.

171.    The ALJ also erred by omitting a finding of the undisputed fact that the PRDOE

failed to comply with IDEA's section 1414(d)(1)(A)(i)(III) requirement of issuing GOT's parents

with "periodic reports on the progress the child is making toward meeting the annual goals (such

as through the use of quarterly or other periodic reports, concurrent with the issuance of report

cards)" during the 2022-2023 school year were GOT's was having serious performance and

behavioral difficulties at school and was evincing a clear and marked regression and diminishing

grades.

172.    The ALJ also erred by omitting a finding of the undisputed fact that the PRDOE

never issued GOT a public-school alternative prior to the commencement of the 2023-2024 school

year on August 16, 2023.

173.    The ALJ also erred by condoning and/or accepting as correct the PRDOE's

insistence, as testified by Mrs. Torres and corroborated in the February 15, 2023 IEP team meeting

minutes (Joint Exhibit 2), for GOT to be medicated as a solution to her regression, behavioral

problems, fragile emotional state and diminishing grades, instead of assessing her needs by a

multidisciplinary team and revising the 2022-2023 IEP, which is a violation of IDEA's section

1412(a)(25)(A) prohibition on mandatory medication provision.

174.    The ALJ also erred by denying and dismissing the underlying complaint without

adjudicating and/or addressing all controversies and relief sought in the underlying due process

complaint.

Complaint for Judicial Review
Case No. 23-cv-1594

175.     Specifically, the ALJ omitted adjudicating the second, third and fourth remedies or causes of action brought in the administrative due process complaint.

176.     The ALJ also erred by omitting to adjudicate all controversies and relief sought in the underlying due process complaint procedure in the light most favorable to GOT as a special needs student, as expressly required by article 15 of Letter of Rights of Special Needs Individuals of Puerto Rico, 1 Laws of P.R. Ann. § 512k.

## VIII.   FIRST CAUSE OF ACTION:
## JUDICIAL REVIEW AND REVERSAL OF ALJ'S RESOLUTION

177.     Plaintiffs re-allege and incorporate paragraphs 1 thru 176 of this complaint.

178.     IDEA's section 1415(i) allows for this Honorable Court to grant in judicial review any relief that it deems appropriate. See 20 U.S.C. §§ 1403,1415(i)(2)-(3). See also 34 C.F.R. §§ 300.516-517.

179.     Plaintiffs respectfully request that this Honorable Court perform a judicial review and reverse the ALJ's resolution as contrary to IDEA and state law and order defendants to provide GOT with all the relief sought in the administrative due process complaint and compensatory educational and related services under IDEA's section 1415(f)(3)(E)(ii) for any additional related services lost during the pendency of this litigation. See 20 U.S.C. § 1415(f)(3)(E)(ii). See also 34 C.F.R. § 300.513(a)(2).

180.     Upon reversing the ALJ's resolution, plaintiffs request that the PRDOE be ordered to pay for the total cost of GOT's education in the Colegio Nuestra Señora de Belén private educational institution for the entire 2023-2024 school year.

Complaint for Judicial Review
Case No. 23-cv-1594

181.    Upon reversing the ALJ's resolution, plaintiffs request that the PRDOE be ordered to evaluate GOT in all areas of suspected disability and to perform reevaluations in any outdated evaluations to, among other, adequately identify her individual needs, emotional state, and current level of academic performance, and to discuss all such evaluation reports in a duly constituted IEP team meeting with prior written notice.

182.    Upon reversing the ALJ's resolution, plaintiffs request that the PRDOE be ordered to provide GOT with an adequately drafted and IDEA compliant IEP for the 2023-2024 school year.

183.    Upon reversing the ALJ's resolution, plaintiffs request that the PRDOE be ordered to immediately provide GOT, through its Remedio Provisional program, with all the related services required by her condition and to be able to receive a FAPE.

184.    The related services that GOT needs to receive from the PRDOE in order to benefit from a FAPE are those that were requested in the due process complaint in case number QEE-2324-27-08-00226, namely, (1) individual psychological therapy once a week for 45 minutes, (2) individual speech and language therapy twice a week of 45 minutes sessions, (3) individual occupational therapy twice a week of 45 minutes sessions, (4) individual educational therapy four times a week of 60 minutes sessions, (5) and evaluating her and discussing its reports in a duly constituted IEP team meeting in the following areas/disciplines: autism, psychoeducational, psychometric, socioemotional, speech and language, and occupational therapy.

Complaint for Judicial Review
Case No. 23-cv-1594

## IX.    SECOND CAUSE OF ACTION:
## REQUEST FOR ORDER FOR DEFENDANTS' SUBMITTAL OF A CERTIFIED
## TRANSLATED COPY OF THE ADMINISTRATIVE DUE PROCESS RECORD

185.    Plaintiffs re-allege and incorporate paragraphs 1 thru 184 of this complaint.

186.    As a procedural safeguard intended to protect GOT's rights, IDEA's section 1415(i)(2)(C)(i) requires that this Court receive the administrative proceedings records from the state educational agency. See 20 U.S.C. § 1415(i)(2)(C)(i) ("In any action brought under this paragraph, the court (i) shall receive the records of the administrative proceedings.").

187.    The state educational agency's duty to elevate a written record of the hearing proceedings is an express obligation imposed by the IDEA to the state educational agency, the PRDOE. See 20 U.S.C. §§ 1415(i)(2)(C), (h)(3).

188.    The PRDOE has exclusive control and custody of the administrative proceedings, and as part of its obligations under IDEA it is responsible for submitting the administrative record to this Court to allow for the judicial review of the ALJ's decision.

189.    It shall also be noted that in Puerto Rico it is the DOE who designates, contracts, monitors, and pays for the administrative law judges who preside over IDEA due process proceedings.

190.    In Torres-Serrant v. Department of Education of P.R., 100 F. Supp. 3d 138 (D.P.R. 2015), this District Court found the PRDOE liable for all expenses of translating from Spanish to English the relevant portions of the administrative record to allow for the judicial review under the IDEA. See also Morales v. Puerto Rico Department of Education, Civil No. 04-cv-1760 (JAD), NH Civil No. 05-DS-114-JD (May 31, 2006)(J. DiClerico) (holding that "[t]he Puerto Rico

35

Complaint for Judicial Review
Case No. 23-cv-1594

Department of Education is the responsible agency" for translating the administrative records from

Spanish to English in an IDEA judicial review case); Rivera-Rodríguez v. Commonwealth of P.R.,

Civil No. 13-cv-1599 (ADC/MEL), Order issued on September 20, 2013 (docket no. 12) (ordering

defendants "to submit a complete record of the administrative proceedings, including any written

transcripts of the hearing(s).").

191.    Pursuant to IDEA's section 1415(i)(2)(C) and the aforecited case law, plaintiffs

respectfully request that this Honorable Court order defendants to submit a certified copy of the

duly translated administrative proceedings record, including the hearing transcripts, pleadings,

legal memoranda, and the documentary evidence presented in such hearings, within the shortest

timeframe deemed reasonable by the Court.

## X.      THIRD CAUSE OF ACTION:
## COMPENSATORY SPECIAL EDUCATION SERVICES

192.    Plaintiffs re-allege and incorporate paragraphs 1 thru 191 of this complaint.

193.    An appropriate remedy under the IDEA is to compel the educational agency to

provide compensatory educational and/or related services to a student with disabilities. See Pihl v.

Mass. Dept. of Educ., 9 F.3d 184, 188-89 (1st Cir. 1993) (holding that "[c]ompensatory education

is available to remedy past deprivations" and that if an IEP is found to be deficient IDEA "may

require services at a future time to compensate for what was lost."); Mary McLeod Bethune Day

Acad. Pub. Charter Sch. v. Bland, 534 F. Supp. 2d 109, 114-15 (D.D.C. 2008) (holding that

"[w]here a school system fails to provide special education or related services to a disabled student,

the student is entitled to compensatory education" and that "[u]nder the theory of compensatory

36

Complaint for Judicial Review
Case No. 23-cv-1594

education, courts and hearing officers may award educational services to be provided prospectively

to compensate for a past deficient program.").

194.    The PRDOE failed to offer GOT with the special education and related services she

needs under the provisions of the IDEA and the ALJ failed to grant the compensatory education

and services that she requires for the two school years (2022-23 and 2023-24) that she has been

deprived of an IDEA complaint IEP, school setting in the LRE, and her much needed supplemental

and related services.

195.    Since GOT currently is and will continue to be denied a FAPE until this Honorable

Court reverses the ALJ's resolution and orders defendants to provide her with all the relief sought

in the administrative complaint, plaintiffs respectfully request that all educational and related

services that have been improperly denied to GOT during the past two years be added to the

compensatory educational and related services award requested herein.

## XI.    FOURTH CAUSE OF ACTION:
## ATTORNEY'S FEES AND COSTS

196.    Plaintiffs re-allege and incorporate paragraphs 1 thru 195 of this complaint.

197.    IDEA's section 1415(i)(3)(B)(i)(I) allows for a federal district court to award

attorney's fees to the parents or guardian of a child with a disability who is the prevailing party in

an administrative or judicial proceeding. See 20 U.S.C. § 1415 (i)(3)(B)(i)(I). See also 34 C.F.R.

§ 300.517(a)(1)(i) (2010).

198.    If plaintiffs emerge as prevailing parties in the captioned case, it is respectfully

requested that this Honorable Court award the attorney's fees and costs incurred in the present

Complaint for Judicial Review
Case No. 23-cv-1594

litigation and in the preceding due process proceedings.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that this Honorable Court review and reverse the resolution issued by ALJ Amelia Cintrón-Velázquez on November 6, 2023 in administrative case number QEE-2324-27-08-00226, and order defendants to provide GOT with all the special education related services and compensatory services sought herein, and to pay for GOT's education in the Colegio Nuestra Señora de Belén private school for the entire 2023-2024 school year, and order payment of the attorney's fees and costs incurred in the present litigation and in the preceding due process proceedings, as well as any other and further relief as it may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 30th day of November 2023.

*s/ Francisco J. Vizcarrondo Torres*
Francisco J. Vizcarrondo-Torres
U.S.D.C. No. 221714
PO Box 270302
San Juan, P.R. 00928-3102
Tel: 787-296-9521
E-Mail: fvizcarrondo@fjvtlaw.com